IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ORISKA INSURANCE COMPANY,

                    Plaintiff,                         Civil Action No.
                                                       6:18-CV-1030 (DNH/DEP)


          v.


AVALON GARDENS REHABILITATION
& HEALTH CARE CENTER, LLC, *et al*.,

                    Defendants.

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFF:

KERNAN PROFESSIONAL            JAMES KERNAN, ESQ.
GROUP, LLP
1310 Utica Street
P.O. Box 750
Oriskany, NY 13424


McCORMACK LAW OFFICES          KEVIN E. McCORMACK, ESQ.
27 Fennell Street, PMB 115
Skaneateles, NY 13152-1423


FOR DEFENDANTS:

CULLEN & DYKMAN LLP            CHRISTOPHER BUCKEY, ESQ.
99 Washington Avenue          NICHOLAS J. FASO, ESQ.
Suite 2020, One Commerce Plaza
Albany, NY 12210-2820

CULLEN, DYKMAN LAW FIRM          JON T. POWERS, ESQ.
One Riverfront Plaza
Newark, NJ 07102

LIPSIUS BENHAIM LAW, LLP         IRA S. LIPSIUS, ESQ.
80-02 Kew Gardens Road           ALEXANDER J. SPERBER, ESQ.
Suite 1030
Kew Gardens, NY 11415

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE


DECISION AND ORDER

This is an action brought by plaintiff Oriska Insurance Company

("Oriska"), a domestic insurance company organized and licensed under

the laws of the State of New York with a principal place of business in

Oriskany, New York, and within this district, against, among others, a

group of more than twenty interrelated skilled nursing facilities collectively

identified as the "Sentosa SNFs".[1] At issue are payments made into "114

---

[1]     The defendants named in plaintiff's amended complaint are Avalon Gardens
Rehabilitation & Health Care Center, LLC d/b/a Brookside Multicare Nursing Center
And Optima Care Smithtown, LLC; Bay Park Center Nursing & Rehabilitation, LLC;
Bayview Manor LLC d/b/a South Point Plaza Nursing and Rehabilitation Center;
Brookhaven Rehabilitation & Health Care Center, LLC; Eastchester Rehabilitation &
Health Care Center, LLC; Garden Care Center, Inc; Golden Gate Rehabilitation &
Health Care Center, LLC; Little Neck Care Center, LLC, Little Neck Nursing Home
LLC; Nassau Operating Company, LLC d/b/a Nassau Extended Care Facility and
Nassau Rehabilitation and Nursing Center/Kingsbridge Heights Receiver, LLC; New
Surfside Nursing Home, LLC; North Sea Associates, LLC d/b/a The Hamptons Center
for Rehabilitation and Nursing; Park Avenue Operating Company, LLC d/b/a/ Park
Avenue Extended Care Facility; Pinegrove Manor II, LLC d/b/a Grace Plaza Nursing
And Rehabilitation Center; Throgs Neck Operating Company, LLC d/b/a Throgs Neck
Extended Care Facility; Townhouse Operating Company, LLC d/b/a Townhouse

Trusts," which are established pursuant to 11 N.Y.C.R.R. Part 126, to fund

workers' compensation payments to injured employees of the Sentosa

SNFs from June 2002 through February 1, 2008, and from June 10, 2010

through May 1, 2018. Oriska claims that the Sentosa SNFs failed in their

obligation to make payments to the 114 Trusts, and brings this action

asserting claims pursuant to the Racketeer Influenced and Corrupt

Organizations ("RICO"), 18 U.S.C. § 1962(c), section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a), and section 502 of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, as well as state

statutory and common law causes of action.

---

Center for Rehabilitation & Nursing; Willoughby Rehabilitation & Health Care Center LLC d/b/a Spring Creek Rehabilitation & Nursing Care Center; Woodmere Rehabilitation & Health Care Center, Inc. d/b/a Five Towns Premier Rehabilitation and Nursing; Niskayuna Operating Co LLC d/b/a Pathways Nursing & Rehabilitation Center; Parkview Care and Rehabilitation Center, Inc.; Shorefront Operating, LLC d/b/a Seagate Rehabilitation & Healthcare Center; White Plains Center For Nursing, LLC; Bent Philipson as the principal partner in control of Sentosacare, LLC a/k/a Sentosa Group; Sentosacare, LLC; Samuel Schlesinger; individually and as principal partner and as officer director and owner of Allstate ASO, Inc. and Allstate Administrators, LLC; and Allstate Administrators, LLC a/k/a Allstate ASO, LLC, Isaac Muller; individually and as an agent for the defendants herein named; Rashbi Management, Inc.; and US Management, Inc. *See generally* Dkt. No. 8.

   Although it appears that defendants Isaac Muller, Rashbi Management, Inc., and US Management, Inc. have been served, no one has appeared on behalf of those defendants. *See* Text Minute Entry dated 10/16/2018. Because all remaining defendants have appeared in this action through the same counsel, for the sake of brevity, those defendants will simply be referred to as "defendants" unless otherwise specified.

Presently before the court are applications by Oriska for a preliminary injunction and for leave to engage in expedited discovery in anticipation of the hearing on that motion, which is scheduled to be held in January 2019 before District Judge David N. Hurd. Also pending before the court is an application by defendants to disqualify James Kernan, Esq. ("Attorney Kernan") from representing Oriska in this matter.[2]

Having considered the extensive written submissions of the parties, as well as oral argument regarding these two issues, for the reasons outlined herein, I conclude that Oriska has not demonstrated the requisite good cause and reasonableness for engaging in expedited discovery, and therefore will deny plaintiff's motion. Turning to defendants' motion to disqualify Attorney Kernan, I find that under the unique circumstances of the case, Attorney Kernan should be removed as counsel of record for Oriska and directed to disengage from taking any role in this litigation.

---

[2] In their motion for disqualification, defendants make a passing reference to requesting costs and attorney's fees without otherwise providing the court with any briefing on this issue. *See, e.g.*, Dkt. No. 47 at 2; Dkt. No. 47-1 at 14. The court finds no basis to award costs and attorney's fees on a motion for disqualification.

I.    BACKGROUND[3]

   A.    Underlying Facts

   Oriska, a domestic property and casualty insurer, was incorporated by Attorney Kernan in April 1990 under the laws of the State of New York.[4] Dkt. No. 47-3 at 3. The company is authorized to issue certain types of insurance policies, including workers' compensation and employers' liability policies. *Id.*

   At various times between 2008 and 2018, the Sentosa SNFs entered into agreements to pay workers' compensation insurance premiums to Oriska in order to cover benefits paid to injured employees of the Sentosa SNFs, pay assessments due to the State of New York, and pay mutually agreed deductible premium to Oriska for its operations. Dkt. No. 8 at 15. Over that period, the Sentosa SNFs paid Oriska the amount of $41,232,180.39 representing (1) New York State assessment charges of $8,704.585.00, (2) premiums to Oriska in the amount of $15,086,150.22,

---

[3]    The foregoing background facts are drawn from plaintiff's allegations in its first amended complaint ("FAC"), the parties' submissions on both motions, representations made by the parties at oral argument, as well as a series of previous federal and state proceedings related to Oriska and/or Attorney Kernan.

[4]    Plaintiff is a wholly-owned subsidiary of Oriska Corporation, which is not a party to this action. Oriska Corporation, in turn, is 82% owned by IPA Acquisitions, Inc., a California corporation, whose voting shares are or were wholly owned by Attorney Kernan. Dkt. No. 47-3 at 3. The remaining 18% is or was owned by trusts for the Kernan family or Attorney Kernan's children. *Id.*

and (3) $17,441,445.17 to reimburse benefit payments made by Oriska to employees of Sentosa SNFs for work-related accidents occurring between June 2010 and May 1 2018. *Id.* at 16. Oriska claims that the amount of $74,509,484 was shown by Sentosa SNFs on relevant financial records as accrued and reported for workers' compensation insurance payments from June 10, 2010 to May 1, 2018, and that therefore the difference, or $33,277,303.61, should have remained and been paid into 114 Trust accounts to reimburse Oriska for payment of $8,105,830, as well as future benefits to employyes of the Sentosa SNFs. *Id.* at 16-18.

Defendants counter that under a stipulation of settlement negotiated between the parties in 2013, it was Oriska, and not the Sentosa SNFs, that bears responsibility for payment of a portion of Sentosa SNFs workers' compensation premiums into 114 Trusts. They note that conspicuously absent from Oriska's FAC is the identification of any purported agreements under which the obligation shifted from Oriska to the Sentosa SNFs to fund the 114 Trust accounts.

In its FAC, Oriska asserts the following causes of action: (1) RICO violations (counts 1, 2 and 3); (2) section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (count 4); (3) violation of section 502(a)(2) of ERISA (count 5); (4) conversion (count 6); (5) unjust enrichment (Count 7); (6)

breach of fiduciary duty (count 8); (7) aiding and abetting breaches of fiduciary duties (count 9);(8) constructive trust (count 10); and (9) accounting (count 11). *See generally* Dkt. No. 8. Oriska seeks declaratory, injunctive, and monetary relief. *Id.* at 76-78.

## B.    Oriska and Attorney Kernan

In 2008, an indictment was returned in the United States District Court for the Northern District of New York, against Attorney Kernan and a co-defendant, accusing Attorney Kernan of violating 18 U.S.C. §§ 1349 (conspiracy to commit fraud), 1341 (mail fraud), 1343 (wire fraud), and 1033 (permitting a felon to engage in the business of insurance). *United States v. Kernan, et al.*, No. 5:08-CR-0061 (N.D.N.Y., filed 2008) ("No. 08-CR-0061), Dkt. No. 1. In that indictment, Attorney Kernan along with non-party Robert J. "Skip" Anderson—a three-time convicted felon—were charged with engaging in a scheme to defraud professional employer organizations by falsely representing that Oriska had been approved and authorized by the State of New York to issue "high deductible" workers compensation insurance policies. No. 08-CR-0061, Dkt. Nos. 1, 19. Ultimately, on March 20, 2009, Attorney Kernan pled guilty to one count of a superseding indictment, filed on July 30, 2008, *id.* at Dkt. No. 19, before Senior District Judge Frederick J. Scullin, Jr., admitting to have violated 18

U.S.C. § 1033(e)(1)(B), which prohibits individuals from knowingly and willfully permitting convicted felons to engage in the business of insurance, in full satisfaction of the superseding indictment. No. 08-CR-0061, Minute Entry dated 3/20/2009. In January 2010, Attorney Kernan was sentenced principally to five years of probation and fined $250,000.[5] No. 08-CR-0061, Dkt. No. 103.

As a result of Attorney Kernan's federal conviction, he was barred from engaging in the "business of insurance" in a particular state without first obtaining the consent of the state's insurance regulator. *See* 18 U.S.C. § 1033(e)(1)(A), (e)(2). By application dated February 18, 2011, Attorney Kernan sought permission from the New York State Department of Financial Services ("NYSDFS") to engage in the business of insurance, pursuant to the statute. Dkt. No. 47-3 at 6. By letter dated May 26, 2011, the NYSDFS issued a preliminary denial. *Id.* at 6-7.

---

[5]     On April 30, 2010, as a result of the underlying federal felony conviction, Attorney Kernan was "suspended [from the practice of law] for five years, effective January 25, 2010, or until the termination of his federal term of probation, whichever period is longer, and until further order" of the New York State Supreme Court, Appellate Division, Fourth Department. *In re Kernan*, 73 A.D.3d 219 (4th Dept 2010); *see also* Dkt. No. 47-3 at 4-5. Attorney Kernan was ultimately reinstated to the practice of law by the Fourth Department on June 12, 2015. *In re Kernan*, 129 A.D.3d 155 (4th Dept 2015); *see also* Dkt. No. 47-3 at 5.

In late 2011, over Attorney Kernan's objection, the matter proceeded to a combined hearing before the NYSDFS Hearing Officer Jeffrey A. Stonehill. *See generally* Dkt No. 47-3. Hearing Officer Stonehill considered two separate, but intertwined, issues, including (1) whether Attorney Kernan "demonstrated untrustworthiness" within the meaning of section 1506(c)(1)(A) of the New York Insurance Law, such that he should be prohibited from acting "as a controlling person" of Oriska; and (2) whether the preliminary denial of Attorney Kernan's application for consent pursuant to 18 U.S.C. § 1033(e)(2) should be made final on the grounds that he demonstrated untrustworthiness or incompetency. *Id.* at 6.

On May 31, 2012, Hearing Officer Stonehill issued a report and recommendation to the Superintendent of the NYSDFS, in which he determined that "substantial evidence proves [Attorney] Kernan is untrustworthy within the meaning of [s]ection 1506(c)(1)(A) of the Insurance Law and that he should not retain control of Oriska by his ownership of voting shares." Dkt No. 47-3 at 10. In addition, Hearing Officer Stonehill concluded that Attorney Kernan failed to sustain his burden of proof that he is "trustworthy to be granted written consent to engage in the business of insurance to 18 U.S.C. § 1033(e)(2)." *Id.*

Ultimately, the Superintendent of the NYSDFS adopted the following recommendation from Hearing Officer Stonehill:

> In accordance with the foregoing Findings of Fact and Conclusion, I recommend that [Attorney] Kernan not be granted written consent to engage in the business of insurance pursuant to 18 U.S.C. § 1033(e)(2), and that the Superintendent issue an order pursuant to Insurance Law § 1506(c)(1)(A) finding that [Attorney] Kernan, as a controlling person of Oriska Insurance Company, has demonstrated his untrustworthiness and directing [Attorney] Kernan to terminate his ownership capacity at Oriska Insurance Company, including but not limited to providing legal or engineering services, or insurance agency services, by himself or by any member of his family or relative, directly or indirectly, to Oriska.

Dkt. No. 47-4 at 3-4. As a result, in a final determination and order dated February 4, 2013 (hereinafter, the "February 2013 NYSDFS order"), the Superintendent declined to issue written consent for Attorney Kernan to engage in the business of insurance pursuant to 18 U.S.C. § 1033(e)(2). *Id.* at 4. In addition, in accordance section 1506(c)(1)(A) of the New York Insurance Law, Attorney Kernan was ordered to terminate his legal interest in Oriska, including but not limited to the provision of legal services to Oriska. *Id.*

On June 4, 2013, Attorney Kernan, Oriska, and Oriska Corporation instituted a proceeding in the United States District Court for the Eastern

District of New York in which they challenged the constitutionality of the federal statute under which Attorney Kernan was convicted, and requested relief from the February 2013 NYSDFS order pursuant to Article 78 of the New York Civil Practice Law and Rules on the grounds that the order was "affected by one or more errors of law, and was arbitrary and capricious and an abuse of discretion." *Kernan v. New York State Dept. of Finan. Servs.*, No. 13-CV-03196 (E.D.N.Y., filed 2013) ("13-CV-03196"), Dkt. No. 1 at 105-06; *see also* 13-CV-03196, Dkt. No. 62 at 22-25.

By memorandum and order filed July 15, 2015, District Judge Joanna Seybert dismissed all federal claims in that action and declined to exercise supplemental jurisdiction over Attorney Kernan's request for Article 78 relief from the February 2013 NYSDFS order, concluding that the proceeding is better-suited for adjudication in the courts of the State of New York. *Kernan v. New York State Dept. of Finan. Servs.*, No. 13-CV-03196, Dkt. No. 80. The Second Circuit Court of Appeals affirmed that determination on November 2, 2017. *Kernan v. New York State Dept. of Finan. Servs.*, 712 F. App'x. 61 (2d Cir. 2017) (summary order).

At some unknown point, Attorney Kernan, Oriska, and/or Oriska Corporation commenced a challenge to the February 2013 NYSDFS order, pursuant to Article 78 of the New York Civil Practice Law and Rules,

in Supreme Court, Oneida County, although the parties have not provided

the court with the benefit of the papers associated with that proceeding.[6]

*See Kernan*, 712 F. App'x at 62 ("Plaintiffs filed a challenge to the

determination pursuant to N.Y. C.P.L.R. Article 78 in New York state court,

which is still pending."); *see also* Dkt. No. 55-7. That proceeding remains

pending before the Appellate Division, Fourth Department.[7]

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on August 28, 2018, and

subsequently filed its FAC, the currently operative pleading, on September

18, 2018. Dkt. Nos. 1, 8. Although their deadline for doing so has not yet

---

[6]     When questioned during oral argument regarding the four-month statute of limitations applicable to Article 78 proceedings pursuant to N.Y. C.P.L.R. § 217, Attorney Kernan indicated his belief that tolling pursuant to N.Y. C.P.L.R. § 205 was applicable and that the Article 78 proceeding in Supreme Court, Oneida County was timely commenced.

[7]     There is some confusion regarding the procedural status of that Article 78petition. Petitioner filed an amended notice of appeal to the Fourth Department referencing a decision by Hon. Patrick F. MacRae, J.S.C. dated March 20, 2018, which denied the petition. Dkt. No. 55-7. In plaintiff's memorandum in opposition to defendants' disqualification motion, however, they represent that the matter was transferred by Justice MacRae to the appeals court.  Dkt No. 55-1 at 6-7.

It should be noted that Justice MacRae is also presiding over in excess of forty-five different suits initiated by Oriska between October 2017 and May 2018 against some or all of the defendants in this action. On March 12, 2018, Justice MacRate issued an order, which memorialized an earlier *sua sponte* determination from February 2018, to the effect that Attorney Kernan is prohibited from representing Oriska until the Appellate Division, Fourth Department issued an order vacating or modifying the February 2013 NYSDFS order or until the NYSDFS lifts the prohibition on Attorney Kernan's representation of Oriska in a legal capacity.

passed, defendants have intimated to the court that in lieu of answering, they intend to move to dismiss plaintiff's complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure on a number of grounds.

On September 19, 2018, Oriska filed a motion for a preliminary injunction. Dkt. No. 9; *see also* Dkt. No. 35. That motion is currently scheduled for oral argument on January 11, 2019 before District Judge David N. Hurd. *See* Dkt. No. 50.

In anticipation of the preliminary injunction hearing, on October 16, 2018, Oriska moved for permission to engage in expedited discovery. Dkt. No. 37. Defendants, in turn, have applied, by motion filed on October 22, 2018, seeking an order disqualifying Attorney James Kernan, Esq. from representing plaintiff in this matter.[8] Dkt. No. 47. Both motions, which are opposed, *see* Dkt. Nos. 54, 55, were the subject of a hearing conducted by the court on November 9, 2018. Following argument, decision was reserved with regard to both motions.

---

[8]     The motion also originally sought disqualification of one of Attorney Kernan's colleagues, Antonio Faga, Esq. *See* Dkt. No. 47. The portion of defendants' disqualification motion related to Attorney Faga was withdrawn on October 24, 2018, based upon his unfortunate death. Dkt. Nos. 52, 53.

III.     DISCUSSION

A.     Disqualification of Attorney Kernan

Defendants advance several arguments in support of their motion for disqualification. Dkt. No. 47. They argue that Attorney Kernan's representation of Oriska in this action constitutes the "business of insurance" pursuant to 18 U.S.C. § 1033(f), and that because Attorney Kernan failed to obtain the written consent of the NYSDFS pursuant to 18 U.S.C. § 1033(e)(2), his appearance on behalf of Oriska violates both 18 U.S.C. § 1033(e)(1)(A) and the New York Rules of Professional Conduct, 22 NYCRR 1200 *et seq*. Dkt. No. 47-1 at 8-11. Defendants further contend that even if by representing Oriska, Attorney Kernan is not engaged in the "business of insurance," his appearance in this action nonetheless violates the February 2013 DFS order, which expressly prohibits him from providing legal services to Oriska. *Id.* at 6. For these reasons, defendants argue that the court has both the "power" and the "duty" to disqualify Attorney Kernan. *Id.* at 11.

In opposition to defendants' motion, Oriska frames much of its argument as an attorney admissions or disciplinary issue, rather than as an attorney disqualification matter. *See generally* Dkt. No. 55. Oriska argues that the February 2013 NYSDFS order is improper because it is

14

contrary to internal guidance provided by the NYSDFS and is in conflict with New York State law with respect to attorney discipline. Dkt. No. 55-1 at 7-10. In addition, Oriska argues that practicing law is distinguishable from engaging in the "business of insurance" and, as a result, Attorney Kernan's appearance does not run afoul of 18 U.S.C. § 1033. *Id.* at 10-14. Oriska notes, moreover, that the federal courts have exclusive jurisdiction over the admission of attorneys to their bars. *Id.* at 14.

### 1.    Standard for Attorney Disqualification

"[I]n deciding questions of professional ethics men of good will often differ in their conclusions." *Fund of Funds Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977). In recognition of this axiom, the court is vested with broad discretion to decide whether to disqualify counsel. *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990).

"The authority . . . to disqualify attorneys derives from [the court's] inherent power to 'preserve the integrity of the adversary process.' " *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. of the City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). A court presented with a motion to disqualify an attorney is tasked with balancing a party's right to "freely . . . choose his counsel . . . against the need to maintain the highest standards of the

profession." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978); *accord, Hempstead Video, Inc.*, 409 F.3d at 132; *see also GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010).

Although state codes of conduct—such as New York's Rules of Professional Conduct—"provide valuable guidance, a violation of those rules may not warrant disqualification." *GSI Commerce Solutions, Inc.*, 618 F.3d at 209 (citing *Hempstead Video*, 409 F.3d at 132); *see also Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F.Supp.2d 273, 275 (S.D.N.Y. 2004) ("When deciding a motion to disqualify an attorney, federal district courts in New York consider various sources of law, including the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and [New York's Rules of Professional Conduct]."). As a result, the violation of a state disciplinary rule does not *ipso facto* lead to disqualification. *See Hempstead Video*, 409 F.3d at 132 (citing *Nyquist*, 590 F.2d at 1246).

In view of the potential for abuse as a tactical device, the court must strictly scrutinize any motion for disqualification. *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (citing *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). This is particularly true because such motions

inevitably result in delay and added expense to proceedings before the court. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir. 1983). For this reason, "the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel in order to protect a client's right to freely choose counsel," *Gov't of India*, 569 F.2d at 739; *Gormin v. Hubregsen*, No. 08-CV-7674, 2009 WL 508269, *2 (S.D.N.Y. Feb. 27, 2009) (noting that a "heavy burden of proof [is required] in order to prevail."). With this approach, disqualification is appropriate "upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case." *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896 (2d Cir. 1982) (citing *Armstrong v. McAlpin*, 625 F.2d 433, 444-46 (2d Cir. 1980); *Nyquist*, 590 F.2d at 1246); *see Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981).[9]

While the Second Circuit has observed that the "trial taint" test cannot " 'correct all possible ethical conflicts,' " it has "also noted that this laudable goal cannot be attained through rulings in the course of litigation without

---

[9]    The Second Circuit has observed that a motion to disqualify is generally invoked in two situations: (1) "where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client[;]" and (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation[.]" *Nyquist*, 590 F.2d at 1246. There are "rare exceptions" for disqualification outside of these two scenarios. *Id.*

inviting the wholesale filing of motions for tactical reasons." *Bottaro*, 680 F.2d at 896. Therefore, "[w]here a threat of tainting the trial does not exist, therefore, the litigation should proceed, the remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar." *Bottaro*, 680 F.2d at 896. Simply stated, "there is usually no need to deal with all other kinds of ethical violations in the very litigation in which they surface." *Nysquist*, 590 F.2d a 1247. If there is any doubt, however, that doubt "is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975); *see also Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436-37 (N.D.N.Y. 2012) (Treece, M.J.).

      2.   <u>Analysis</u>

Under federal law, a person who has been convicted of an offense under 18 U.S.C. § 1033[10] "may engage in the business of insurance or participate in such business if such person has the *written consent* of any insurance regulatory official authorized to regulate the insurer, which consent specifically refers to this subsection." 18 U.S.C. § 1033(e)(2) (emphasis added). The term "business of insurance" is defined by the statute as

---

[10]     Section 1033 was enacted in 1994 as part of the Violent Crime Control and Law Enforcement Act of 1994, Public Law 103-322 (H.R. 3355).

        (A) the writing of insurance, or

        (B) the reinsuring of risks,

> by an insurer, including all acts necessary or incidental to such writing or reinsuring and the activities of persons who act as, or are, officers, directors, agents, or employees of insurers or who are other persons authorized to act on behalf of such persons[.]

18 U.S.C. § 1033(f).

In this case, the parties do not seriously dispute that Attorney Kernan was convicted of an offense under 18 U.S.C. § 1033. Dkt. No. 47-1 at 7; Dkt. No. 55-1 at 5. Moreover, it is uncontradicted that Attorney Kernan tried, but failed, to obtain the written consent of the NYSDFS for permission to engage in the "business of insurance" pursuant to 18 U.S.C. § 1033(e)(2). *See generally* Dkt. Nos. 47-3, 47-4. Instead, the parties disagree with respect to whether Attorney Kernan's representation of Oriska in this matter constitutes engagement in the "business of insurance" as defined by 18 U.S.C. § 1033(f), and whether Attorney Kernan was required to obtain the written consent of the NYSDFS in order to serve as Oriska's outside counsel in the first instance. *Compare* Dkt. No. 47-1 at 9-10 *with* Dkt. No. 55-1 at 9.

The court disagrees with the assertion that Attorney Kernan's representation of Oriska in this matter does not constitute engagement in

19

the "business of insurance" as the term is defined by the statute. Although "[t]he statute is not a model of clarity," *U.S. v. Renzi*, 769 F.3d 731, 753 (9th Cir. 2014), the term "business of insurance" is defined broadly, to include "all acts necessary or incidental" to the writing of insurance or the reinsurance of risks. 18 U.S.C. § 1033(f). This extends to the activities of persons "who act as, or are, officers, directors, agents, or employees of insurers or other persons authorized to act on behalf" of the insurer. *Id.*

Unfortunately, the scope of "business of insurance" for purposes of 18 U.S.C. § 1033(f) is not an issue that is frequently confronted by the federal courts. The court is guided, however, by Senior District Judge S. Arthur Spiegel's decision in *Beamer v. NETCO Inc.*, 411 F. Supp. 2d 882 (S.D. Ohio 2005), wherein the court construed the phrase "business of insurance" broadly to include software development, creation, and sales. *Id.* at 889. In rejecting plaintiff's argument that he was merely a software salesperson, the court observed:

> The facts show [the plaintiff] engaged in the business of insurance by developing and creating a software program which produced insurance forms for insurance title agencies. [He] initiated and maintained relationships with insurance underwriters, helped negotiate contracts with underwriters, set up new relationships when his employer expanded to other states, participated in management meetings regarding expansion of the business, and participated in the operational

aspects of the business. Moreover, [the plaintiff]'s software provided computerized forms and databases which agents used to produce insurance documents. [The plaintiff] cannot claim that he was merely a software salesperson when he designed these insurance forms and databases which an agent then used to create insurance forms. [The plaintiff], as the form creator, designed the boilerplate language of the forms, while the agent merely inserted the insured's name and company on the form to create a legal binding contract. Thus, [he] was not merely a seller of software, instead he was involved in the business of insurance by creating legally binding contract language.

*Id.* at 889-90 (internal citations omitted).

As the Ninth Circuit once quipped, "[i]f it looks like an insurance agency and acts like an insurance agency, it's probably engaged in the business of insurance." *Renzi*, 769 F.3d at 754. Here, the court finds that Attorney Kernan's appearance in this action constitutes the "business of insurance," for which the written consent of the NYSDFS is required pursuant to U.S.C. § 1033(e)(2). In filing this action on behalf of Oriska, Attorney Kernan has undertaken an act that is either necessary or incidental to the writing of insurance or reinsuring of risks. 18 U.S.C. § 1033(f). This matter involves the alleged underfunding of 114 Trust accounts, which are by their very nature intended to act as mechanisms to secure reinsurance obligations and for which Oriska was named as the designated beneficiary. *See generally* 11 N.Y.C.R.R. Part 126. In initiating

this action and attempting to secure funds for the 114 Trusts, Attorney Kernan has undertaken an act that his necessary or incidental to the writing of insurance or reinsurance of risks. To conclude otherwise would run afoul of the statute's salutary purpose, which was to "make it a Federal crime to defraud, loot, or plunder an insurance company." *See* 139 Cong. Rec. E209-04, E210 (Statement of Rep. Dingell); *see also id.* ("[E]nforcement of insurance laws and regulations is one of the weakest links in the present insurance regulatory system").

The court is not persuaded that a different result is required by Oriska's overly-broad reading of an opinion of the NYSDFS Office of General Counsel. In Opinion No. 08-04-30, which expressly indicated that it was both "informal" and "not binding" on the courts, the NYSDFS considered several issues, including the circumstances in which an attorney could be considered as being engaged in the "business of insurance" as defined in 18 U.S.C. § 1033(f). The opinion concluded that "in-house counsel for an insurer engages in the 'business of insurance' by virtue of the attorney's status as an employee," but that "an attorney at an unaffiliated law firm that is retained by an insurer to defend its insureds in third-party lawsuits, however, is a different matter," because that attorney was not in a position that typically involved the writing of insurance or

reinsurance of risks. Contrary to Oriska's assertion that the February 2013 NYSDFS order was "contrary to legal guidance of its own counsel," Dkt. No. 55-1 at 8-9, the NYSDFS did not, and has not, considered the precise situation presented to the court; that is, whether a waiver is required for an attorney at an unaffiliated law firm that is directly representing the *insurer*, rather than *insureds* in third-party lawsuits. In this instance, Attorney Kernan's actions are far more akin to those of a general counsel for an insurer, than of an unaffiliated lawyer paid by an insurance carrier to represent its insured. In any event, moreover, even if Opinion No. 08-04-30 could be so broadly construed as to have considered this issue, it is well-settled that "federal courts owe no deference to state agency's interpretation of federal law that they are not charged with enforcing." *Bldg. Trades Emp'rs' Educ. Ass'n v. McGowan*, 311 F.3d 501, (2d Cir. 2002); *Perry v. Dowling*, 95 F.3d 231, 236 (2d Cir. 1996) (stating that when a state agency interprets a federal statute, deference is not appropriate).

Even if I were inclined to agree with Oriska's position that Attorney Kernan's appearance in this matter does not constitute the "business of insurance," I would nonetheless still conclude that he must be disqualified from representing Oriska. According to the February 2013 NYSDFS order,

Attorney Kernan was ordered to terminate his "legal interest, power and authority as a controlling person of Oriska" pursuant to 1506(c)(1)(A) of New York's Insurance Law. Dkt. No. 47-4 at 4. The NYSDFS went on to order that Attorney Kernan "shall not serve in any capacity at Oriska Insurance Company, including but not limited to providing legal or engineering services, or insurance agency services, personally or by any member of his family, directly or indirectly, to Oriska Insurance Company."[11] *Id.* Based on the procedural posture of this case, at this time, that order is entitled to some measure of deference, and I see no basis to override or depart from the February 2013 NYSDFS order. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 612 F.2d. 644, 648 (2d Cir. 1979) ("In many contexts the reasoned decision-making of administrators bearing sensitive responsibilities is entitled to judicial deference."); *see also Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321 (2d Cir. 1998) ("When deference is due, however, it is not because of the factfinder's status as a state agency, but because of the

---

[11]     Oriska's papers do not necessarily address section 1506(c)(1)(A) of New York's Insurance Law, but assert that the February 2013 NYSDFS order was issued "under the guise of denying Kernan's request for waiver[.]" Dkt. No. 55-1 at 6. Accordingly, Oriska's papers focus on NYSDFS's failure to issue written consent, rather than upon the grounds upon which NYSDFS prohibited Attorney Kernan from providing legal services to Oriska. *See generally* Dkt. No. 55.

factfinder's inherent expertise on 'technical matters foreign to the experience of most courts.' ").

This action represents one of the "rare exceptions" for attorney disqualification outside of the two scenarios in which it is generally invoked. *Nyquist*, 590 F.2d at 1246. Given the unique circumstances of this case and in the exercise of the court's broad discretion, however like Justice MacRae, I agree with defendants that Attorney Kernan is prohibited from representing Oriska, and therefore, he must be disqualified from representing plaintiff in this action.

B.    <u>Expedited Discovery</u>

In its motion for expedited discovery, Oriska requests leave to serve fifty-nine subpoenas seeking a wide range of documents from various banking institutions relating to a sixteen-year period. Dkt. No. 37-1 at 4-6. Specifically, those subpoenas purport to request "[c]opies of original checks, deposit slips and account statements and bank records of customer accounts from January 2002 to May 2018" regarding accounts of the various defendants. *See* Dkt. No. 22. Oriska contends that the information sought is relevant and necessary to permit it to support the request for a preliminary injunction.

Rule 26(d) of the Federal Rules of Civil Procedure governs the

timing of discovery and provides, in relevant part, as follows:

> A party may not seek discovery from any source
> before the parties have conferred as required by
> Rule 26(f), except . . . when authorized by these
> rules, by stipulation, or by court order.

Fed. R. Civ. P. 26(d)(1); *see OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239

F.R.D. 300, 302-03. Rule 26, in turn requires parties to meet at an early

stage of litigation in order to discuss various subjects including,

importantly, discovery, and to develop a proposed discovery plan for

submission to the court. Fed. R. Civ. P. 26(f)(2), (3); *see OMG Fidelity*,

239 F.R.D. at 302-03. Rule 26(f) does not specify when such a conference

must occur, other than to state that it must take place "as soon as

practicable" and, as an outer limit, "at least 21 days before a scheduling

conference is held or a scheduling order is due under Rule 16(b)[.]" Fed.

R. Civ. P. 26(f)(1); *OMG Fidelity*, 239 F.R.D. at 303. In this case, the court

has not yet conducted a Rule 16 conference or required the submission of

the court's standard civil case management plan, which mandates that the

parties provide information regarding their expectations as to discovery.

During oral argument, the parties also reported to the court that they had

not yet conferred pursuant to Rule 26(f).

The decision of whether to permit expedited discovery is entrusted to the court's sound discretion. Fed. R. Civ. P. 26(d); *OMG Fidelity,* 239 F.R.D. at 302. The exercise of that discretion is informed by whether the moving party has demonstrated both good cause and reasonableness.[12] *Garisan Etika(m) SDN BHD v. Robert F. Naples Assoc. Inc.*, No. 1:11-CV-0096, 2011 WL 13234727, at *2 (N.D.N.Y. Feb. 10, 2011).

The pendency of a preliminary injunction motion and an asserted need for discovery in order to support or defend against such a motion can in certain circumstances provide the requisite good cause for approving expedited discovery. *Radio Sys. Corp. v. Sunbeam Prod., Inc.*, No. 3:12-CV-648, 2013 WL 416295, at *2 (E.D. Tenn. Jan. 30, 2013) (citing Fed. R. Civ. P. 26(d) (1993 Advisory Committee Notes)). The pendency of such a motion, however, does not automatically entitle a party to expedited

---

[12]    Although I am applying the more relaxed standard of "good cause and reasonableness," following my decision in *OMG Fidelity*, I note that another judge of this court, in a relatively recent decision, applied the more stringent test announced in *Notaro v. Koch*, 96 F.R.D. 403, 405 (S.D.N.Y. 1982) to address such a request. *See Dentsply Sirona, Inc. v. LIK Supply, Corp.*, No. 3:16-CV-00806, 2016 WL 3920241, at *9 (N.D.N.Y. July 15, 2016) (D'Agostino, J.). Under that *Notaro* test the court must examine four factors, including (1) irreparable injury; (2) whether there has been a showing some probability of success on the merits; (3) whether a party seeking discovery has demonstrated some connection between the expedited discovery and the avoidance of the irreparable injury; and (4) whether there is evidence that the injury that will result without expedited discovery looms greater than the injury the opposing party will suffer if the expedited relief is granted. *Dentsply Sirona, Inc.,* 2016 WL 3920241, at *9.

discovery. *Wolcox Indus. Corp. v. Hansen*, 279 F.R.D. 64, 68 (D.N.H. 2012).

Although Oriska argues otherwise, I remain unconvinced that it has established good cause to permit the sweeping, non-party discovery that it now seeks. The threshold issue that must be addressed in the action, including in the pending preliminary injunction motion, is whether under the parties' agreements or some other form of authority, including notably the party's stipulation of settlement dated September 24, 2013, the Sentosa SNFs, or instead Oriska, is obligated to place premium monies into the 114 Trust accounts. The subpoenas Oriska proposes to serve seeks to trace monies that were reflected by the Sentosa SNFs as expended for workers' compensation premiums and allegedly wrongfully diverted from the 114 Trust accounts, and appear instead to be more akin to efforts to locate assets that might be available to satisfy any money judgment ultimately entered in the case should Oriska be successful. Expedited discovery for such purposes is typically not granted. In my view, the discovery now sought should await a ruling by the court concerning this and other threshold issues, which may materially reshape the scope of Oriska's claims in this action and permit the discovery requests to be

analyzed under the relevance and proportionality standards set out in Rule 26(b) of the Federal Rules of Civil Procedure.[13]

Turning to the question of reasonableness, I note at the outset that courts are exceedingly sensitive to discovery requests propounded to non-parties. Fed. R. Civ. P. 45(d)(1); *Henry v. Morgan's Hotel Group, Inc.*, No. 15-CV-1789, 2016 WL 303114, *4 n.2 (S.D.N.Y. Jan. 25, 2016); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005). Against that backdrop, I have reviewed the proposed discovery demands and determined that the scope and extent of the subpoenas, as well as their sheer number, weigh against a finding of reasonableness.[14]

---

[13] In addition to challenging Oriska's position on the threshold question of who has bears the legal obligation to make the required premium deposits into the 114 Trust accounts, defendants have announced their intention to file a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, on the basis, among other grounds, of their argument that the parties' stipulation of settlement specifies that disputes regarding the agreement must be resolved in New York State Supreme Court, Oneida County. The filing or the anticipated filing of such a dismissal motion is a factor that the court may consider in ruling upon a motion for expedited discovery. *OMG Fidelity,* 239 F.R.D. at 304; *see also Wilcox Induss. Corp. v. Hansen*, 279 F.R.D. 64, 72 (D.N.H. 2012) ("While not dispositive of the issue, the pendency of defendants' motions to dismiss weighs against ordering expedited discovery.").

[14] In a pure sense, defendants are not properly positioned to have standing to challenge the subpoenas, whether through a motion to quash or in opposing a motion to compel compliance, since the subpoenas do not appear to seek materials that are privileged. *Estate of Ungar v. Palestinian Auth.*, 332 F. App'x. 643, 645 (2d Cir. 2009) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008)); *see also* Fed. R. Civ. P. 45(d)(3)(B). The court may, however, consider the scope of the subpoenas as part of the reasonableness inquiry. *See, e.g., Raza v. City of New York,* 998 F. Supp. 2d 70,

I note, moreover, that Oriska purports to seek compliance with the disputed subpoenas in order to develop information for use in connection with the pending preliminary injunction motion which is scheduled for a hearing in January 2019. A very likely response to the subpoenas would be the filing of objections by the recipient financial institutes as to burden and breadth, pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure. If that were to occur, Oriska would then be reuqired to move in the courts where the subpoenas were issued for orders compelling compliance. *Id.*; *see also* Fed. R. Civ. P. 37(a)(2) ("A motion for an order to a nonparty must be made in the court where the discovery is or will be taken."); *see United States ex rel. Ortiz v. Mount Sinai Hospital*, 169 F. Supp. 3d 538, 543 (S.D.N.Y. 2016). In the court's experience, it would be virtually impossible for that process to unfold within a timeframe that would permit compliance with the subpoenas, if it were to be ordered, prior to the scheduled preliminary injunction hearing. This factor similarly weighs against the finding of reasonableness. *See 3M Co. v. HSBC Bank USA,*

---

75 (E.D.N.Y. 2013) (concluding that the plaintiff failed to show reasonableness given "given the breadth of [the p]laintiffs' document requests"); *Fed. Exp. Corp. v. Fed. Espresso, Inc.*, No. 97-CV-1219, 1997 WL 736530 (N.D.N.Y. Nov. 24, 1997) (noting that "the scope of permissible expedited discovery is limited to requests that are more narrowly 'tailored to the time constraints under which both parties must proceed [and] to the specific issues that will have to be determined at the preliminary injunction hearing.' ") (Pooler, J.)

*N.A.*, No. 16-CV-5984, 2016 WL 8813992, at *2 (S.D.N.Y. Oct. 21, 2016); *Irish Lesbian and Gay Org. v. Giuliani*, 918 F. Supp. 728, 731 (S.D.N.Y. 1996) (denying expedited discovery where it was "not reasonably tailored to the time constraints under which both parties must proceed").

In sum, having carefully reviewed the matter, I find that Oriska has demonstrated neither good cause nor reasonableness associated with its efforts to serve fifty-nine subpoenas for bank records extending over a sixteen-year period prior to the parties' Rule 26(f) meeting and the court's initial ruling on the pending preliminary injunction motion, as well defendants' contemplated motion pursuant to Rule 12(b)(6).

IV.    SUMMARY AND ORDER

Based upon the parties' submissions and the recent hearing conducted by the court, I conclude that Attorney Kernan was required pursuant to 18 U.S.C. § 1033(e)(2) to obtain the written consent of the NYSDFS in order to represent Oriska, but failed to obtain that consent, and, further that in any event, his representation of plaintiff violates the February 2013 NYSDFS order. I will therefore order that he be disqualified a counsel of record for  plaintiff in this matter and direct that he have no further involvement in the case.

Turning to the request by Oriska for expedited discovery, I conclude that it has not met the applicable standard of showing good cause and reasonableness, and therefore will deny that request. Based upon the foregoing, it is hereby

ORDERED, that defendants' motion to disqualify Attorney James Kernan, Esq. from representing the plaintiff in this matter (Dkt. No. 47) is GRANTED, and Attorney Kernan is directed to withdraw from the case and have no further involvement with it; and it is further

ORDERED, that plaintiff's request for expedited discovery (Dkt. No. 37) be and is hereby DENIED.

David E. Peebles
U.S. Magistrate Judge


Dated:     November 21, 2018
           Syracuse, NY