UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ORISKA INSURANCE COMPANY,

        Plaintiff,

    -v-                    6:18-CV-1030

AVALON GARDENS
REHABILITATION & HEALTH CARE
CENTER, LLC, doing business as
Brookside Multicare Nursing Center
and Optima Care Smithtown, LLC,
BAY PARK CENTER NURSING &
REHABILITATION, LLC,
BROOKHAVEN REHABILITATION
& HEALTH CARE CENTER,
EASTCHESTER REHABILITATION
& HEALTH CARE CENTER, LLC,
GARDEN CARE CENTER, INC.,
GOLDEN GATE REHABILITATION
& HEALTH CARE CENTER, LLC,
LITTLE NECK CARE CENTER, LLC,
LITTLE NECK NURSING HOME
LLC, NASSAU OPERATING
COMPANY, LLC, doing business as
Nassau Extended Care Facility and
Nassau Rehabilitation and Nursing
Center/Kingsbridge Heights Receiver,
LLC, NEW SURFSIDE NURSING
HOME, LLC, NORTH SEA
ASSOCIATES, LLC, doing business
as The Hamptons Center for
Rehabilitation and Nursing, PARK
AVENUE OPERATING COMPANY,
LLC, doing business as Park Avenue
Extended Care Facility, PINEGROVE
MANOR II, LLC, doing business as
Grace Plaza Nursing and
Rehabilitation Center, THROGS
NECK OPERATING COMPANY, LLC,
doing business as Throgs Neck
Extended Care Facility, TOWNHOUSE
OPERATING COMPANY, LLC, doing

business as Townhouse Center for
Rehabilitation & Nursing,
WILLOUGHBY REHABILITATION
& HEALTH CARE CENTER LLC, doing
business as Spring Creek
Rehabilitation & Nursing Care Center,
WOODMERE REHABILITATION &
HEALTH CARE CENTER, INC.,
doing business as Five Towns Premier
Rehabilitation and Nursing,
NISKAYUNA OPERATING CO LLC,
doing business as Pathways Nursing
& Rehabilitation Center, PARKVIEW
CARE AND REHABILITATION
CENTER, INC., BENT PHILIPSON,
as the Principal Partner in Control of
Sentosacare, LLC, a/k/a Sentosa
Group, SENTOSACARE, LLC,
SAMUEL SCHLESINGER, Individually
and as Principal Partner and as Officer,
Director and Owner of Allstate ASO,
Inc. and Allstate Administrators, LLC,
ALLSTATE ADMINISTRATORS, LLC,
also known as Allstate ASO, LLC,
ISAAC MULLER, Individually and as
an Agent for the Defendants herein
named, RASHBI MANAGEMENT,
INC., US MANAGEMENT, INC.,
BAYVIEW MANOR LLC, doing business
as South Point Plaza Nursing and
Rehabilitation Center, SHOREFRONT
OPERATING, LLC, doing business as
Seagate Rehabilitation & Healthcare
Center, and WHITE PLAINS
CENTER FOR NURSING, LLC,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

HITZKE & FERRAN, LLP                        DANIEL L. HITZKE, ESQ.
Attorneys for Plaintiff                     JESSICA SPRAGUE, ESQ.
100 Oceangate, Suite 1100
Long Beach, CA 90802

CULLEN AND DYKMAN LLP                       CHRISTOPHER E. BUCKEY, ESQ.
Attorneys for Sentosa Defendants            NICHOLAS J. FASO, ESQ.
80 State Street, Suite 900
Albany, NY 12207

LIPSIUS BENHAIM LAW, LLP                    IRA S. LIPSIUS, ESQ.
Attorneys for Sentosa Defendants            ALEXANDER SPERBER, ESQ.
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, NY 11415

K & L GATES LLP                             JON T. POWERS, ESQ
Attorneys for Sentosa Defendants
One Newark Center, 10th Floor
Newark, NJ 07052

HARRINGTON, OCKO LAW FIRM                   KEVIN J. HARRINGTON, ESQ.
Attorneys for Defendant Isaac Muller        MICHAEL W. FREUDENBERG, ESQ.
81 Main Street, Suite 215
White Plains, NY 10601

DAVID N. HURD
United States District Judge

# TABLE OF CONTENTS

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

II.     BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

III.    DISCUSSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

        A.      Motions to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

                1.      The Forum Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

                2.      Oriska's Federal Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

                        a. RICO.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18
                           i.  Section 1962(c). . . . . . . . . . . . . . . . . . . . . . . . . . . .     20
                           ii.  Section 1962(a). . . . . . . . . . . . . . . . . . . . . . . . . . . .     25
                           iii.  Section 1962(d). . . . . . . . . . . . . . . . . . . . . . . . . . . .     27

                        b. Lanham Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     28

                        c. ERISA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     31

        B.      Other Matters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     33

                1.      State Law Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     33

                2.      Preliminary Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     33

                3.      Magistrate Judge Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . .     33

                4.      Supplemental Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . .     34

                5.      Sanctions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     38

IV.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     37

**MEMORANDUM–DECISION and ORDER**

# I. INTRODUCTION

On August 28, 2018, plaintiff Oriska Insurance Company ("Oriska" or "plaintiff") filed this action against defendants Avalon Gardens Rehabilitation and Health Care Center, LLC ("Brookside"), Bay Park Center Nursing and Rehabilitation, LLC ("Bay Park"), Brookhaven Rehabilitation and Health Care Center, LLC ("Brookhaven"), Bayview Manor LLC ("South Point"), Eastchester Rehabilitation and Health Care Center, LLC ("Eastchester"), Garden Care Center, Inc. ("Garden Care"), Golden Gate Rehabilitation and Health Care Center, LLC ("Golden Gate"), Little Neck Care Center, LLC ("Little Neck Care"), Little Neck Nursing Home, LLC ("Little Neck"), Nassau Operating Company, LLC ("Nassau"), New Surfside Nursing Home, LLC ("Surfside"), North Sea Associates, LLC ("North Sea"), Park Avenue Operating Company, LLC ("Park Avenue"), Pinegrove Manor II, LLC ("Pinegrove"), Throgs Neck Operating Company, LLC ("Throgs Neck"), Townhouse Operating Company, LLC ("Townhouse"), Willoughby Rehabilitation and Health Care Center, LLC ("Willoughby"), Woodmere Rehabilitation and Health Care Center, Inc. ("Woodmere"), Niskayuna Operating Co., LLC ("Niskayuna"), Parkview Care and Rehabilitation Center, Inc. ("Parkview"), Sentosacare, LLC ("Sentosa"), Bent Philipson, as the principal partner in control of Sentosa ("Philipson"), Allstate Administrators, LLC, also known as Allstate ASO, LLC ("Allstate"), Samuel Schlesinger, individually and as principal partner and as officer, director, and owner of Allstate ("Schlesinger"), Isaac Muller, individually and as an agent for the named defendants ("Muller"), Rashbi Management, Inc. ("Rashbi Management"), and US Management, Inc. ("US Management").

Oriska's eighty-five page, eleven-count civil pleading asserted, *inter alia*, claims under three federal statutes:  the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Employee Retirement Income Security Act of 1974 ("ERISA"), and Section 43(a) of the Lanham Act.  Broadly stated, plaintiff's complaint alleged the various named defendants were engaged in a scheme to divert millions of dollars in insurance premiums from certain trust funds set up to receive those payments.  The matter was originally assigned to Chief U.S. District Judge Glenn T. Suddaby.

Shortly thereafter, Oriska amended its complaint to add Shorefront Operating, LLC ("Seagate") and White Plains Center for Nursing, LLC ("White Plains") as two more defendants allegedly involved in the scheme.  *See* Dkt. No. 8.  As plaintiff explained in the Civil RICO Statement it later submitted in accordance with this District's General Order #14, the twenty-nine defendants named in its amended pleading fall into four different categories:  (1) a group of skilled nursing facilities collectively known as the "Sentosa SNFs"; (2) Sentosa and Allstate, limited liability companies that operate and administer the Sentosa SNFs; (3) the individual defendants Philipson, Schlesinger, and Muller are involved in the management and operation of the Sentosa SNFs; and (4) Rashbi Management and US Management are two entities with "an interest in the disposition of" the allegedly stolen funds.  *See generally* Dkt. No. 20 ("Pl.'s Civil RICO Statement"); *see also* Am. Compl. ¶¶ 39-40.

On September 19, 2018, Oriska notified the Court of its intention to seek a preliminary injunction and requested an expedited briefing schedule for its motion.  Dkt. No. 9.  Citing a litany of procedural deficiencies with the filing, Chief Judge Suddaby denied plaintiff's request.  Dkt. No. 11.

Thereafter, Oriska filed a "notice of related cases" in which it requested this case be transferred to the undersigned. Dkt. No. 12. According to plaintiff's filing, the current dispute between plaintiff and these defendants "arises out of the same basic facts and circumstances" as *Oriska Insurance Company v. The Power P.E.O., Inc. et al.*, 5:03-CV-1481, a prior matter closed in 2008. *Id*. Chief Judge Suddaby granted plaintiff's request on October 10, 2018. Dkt. Nos. 28-29.

On October 12, 2018, Oriska moved under Federal Rule of Civil Procedure ("Rule") 65 for a preliminary injunction that would require the named defendants to disgorge the "missing" $33,277,303.61 and place it in trust during the pendency of these civil proceedings. Dkt. No. 35 (requesting expedited hearing); *see also* Dkt. No. 50 (setting standard briefing schedule). Plaintiff's renewed filing attempted to cure the various procedural deficiencies previously identified by the Chief Judge. *Id*.; *see also* Dkt. No. 11. The motion has been fully briefed and remains pending. *See, e.g.*, Dkt. Nos. 82, 83, 84, 85.

On October 15, 2018, the parties appeared at a telephone conference before U.S. Magistrate Judge David E. Peebles. *See* Text Minute Entry for 10/16/2018. There, Judge Peebles extended certain initial deadlines and granted permission to brief two, particularly time-sensitive matters raised by the parties: (1) Oriska's request for expedited discovery; specifically, "leave to serve fifty-nine subpoenas seeking a wide range of documents from various banking institutions relating to a sixteen-year period"; and (2) defendants' request that two of plaintiff's attorneys be disqualified from representing plaintiff in this action. *Id*.

The parties briefed both issues at length. Dkt. Nos. 37, 39, 40, 41, 43, 47, 48, 49, 54, 55. Defendants partially withdrew their motion to disqualify Oriska's attorneys after Attorney

Antonio Faga unexpectedly passed away,[1] Dkt. Nos. 52, 53, and Judge Peebles heard oral argument on what remained of both motions on November 9, 2018. Dkt. No. 60; Text Minute Entry for 11/9/2018.

On November 21, 2018, Judge Peebles issued a Decision and Order (the "November 21 Order") denying Oriska's motion for expedited discovery and granting defendants' motion to disqualify Attorney Kernan.[2] Dkt. No. 64. Plaintiff has appealed to this Court from Judge Peebles's November 21 Order. Dkt. No. 71. The motion has been fully briefed and remains pending. Dkt. No. 92; *see also* Dkt. No. 122 (seeking to expedite the matter); Dkt. No. 123 (opposing the request to expedite).

On December 10, 2018, the Sentosa SNFs, Sentosa, Philipson, Schlesinger, and Allstate (the "Sentosa defendants") and Muller (collectively "defendants") moved under Rule 12(b)(6) to dismiss Oriska's amended complaint in its entirety.[3] Dkt. Nos. 73, 74. Both motions have been fully briefed and remain pending. Dkt. Nos. 90, 93-97; *see also* Dkt. No.

---

[1] On October 23, 2018, Judge Peebles ordered Attorney James Kernan to show cause "why he should not be stricken from the roll of members of the bar of the court" for his prior felony conviction. Dkt. No. 51.; *see also Kernan v. N.Y. State Dep't of Fin. Servs.*, 712 F. App'x 61, 63-64 (2d Cir. 2017) (summary order) (rejecting Attorney Kernan's constitutional challenge to New York State's decision to bar him from engaging in the business of insurance in New York following his March 2009 felony conviction). Attorney Kernan timely responded. Dkt. No. 57. Judge Peebles initially adjourned the show cause hearing *sine die*, Dkt. No. 56, but then consolidated it with oral argument on the parties' other motions, Dkt. No. 61.

[2] Attorney Kernan moved to withdraw as counsel of record, Dkt. No. 66, and Judge Peebles granted the request, Dkt. No. 68. On December 13, 2018, Oriska moved for an emergency stay of Judge Peebles's November 21 Order disqualifying Attorney Kernan. Dkt. No. 75. Plaintiff's request was denied. Dkt. No. 76. Attorney Kernan has since been removed as a member of the bar of this Court. Dkt. No. 115. He has appealed that issue to the Second Circuit, where it remains pending.

[3] Neither Rashbi Management nor US Management joined the motions, but it is unclear whether they have been properly served. In any event, plaintiff has repeatedly represented to the Court that these entities have been named as defendants "solely for [their] interest in the disposition of funds that are the subject of this action." *See, e.g.*, Dkt. No. 121-1; Am. Compl. ¶¶ 39-40.

118 (requesting leave to supplement the briefing to include information about a state court action that declared void "all policies issued by Oriska . . . subsequent to February 1, 2013").

On February 4, 2019, the Sentosa defendants moved under Rule 11 seeking sanctions against Oriska and its counsel for including "patently false" factual allegations in its operative pleading. Dkt. No. 105. The motion has been fully briefed and remains pending.[4] Dkt. No. 110, 112, 113.

On July 3, 2019, Oriska moved this Court to exercise "supplemental jurisdiction" over a matter now pending in Supreme Court, Oneida County, under index number "EFCA2017-002154." Dkt. No. 121. The motion has been fully briefed and remains pending. Dkt. Nos. 124, 125, 127.

Finally, on July 29, 2019, Oriska attempted to file a second amended complaint. Dkt. Nos. 126, 128, 129, 130, 131, 132, 133, 134, 135, 136. However, U.S. Magistrate Judge Miroslav Lovric struck plaintiff's filings for failure to comply with various aspects of Rule 15 or this District's Local Rules regarding the filing of amendments to pleadings. *See* Dkt. No. 144. Accordingly, the amended complaint filed on September 18, 2018, Dkt. No. 8, remains the operative pleading in this action.

The pending motions have been fully briefed and will be decided on the basis of the submissions without oral argument.

---

[4] Attorney Kevin E. McCormack also moved for leave to withdraw as counsel of record for plaintiff. Dkt. No. 100. The Sentosa defendants indicated that they did not oppose Attorney McCormack's request, but insisted that plaintiff's remaining counsel "be required to take responsibility for the veracity of Oriska's pleadings." Dkt. No. 101. Attorney McCormack sought leave to reply to defendants' statement, Dkt. No. 102, which Judge Peebles granted, Dkt. No. 103. Judge Peebles initially scheduled oral argument on the matter, Dkt. No. 104, but later cancelled it and granted Attorney McCormack's request. Dkt. No. 109. At that time, Judge Peebles noted that, "by advocating for plaintiff['s] complaint [plaintiff's new counsel] subjects himself to potential liability under Rule 11." *Id*.

## II. **BACKGROUND**[5]

Oriska is an insurance company headquartered in Oriskany, New York. Am. Compl. ¶ 11. Plaintiff provides various forms of insurance coverage, including workers' compensation and health and disability insurance. *Id*. As relevant here, plaintiff issues workers' compensation insurance policies to the Sentosa SNFs. *See generally id*.

Sentosa, Allstate, and the twenty-two Sentosa SNFs are organized as limited liability companies under New York law. Am. Compl. ¶¶ 12-34, 36. Philipson, a resident of Spring Valley, New York, "is the largest percentage owner of [the] Sentosa SNFs." *Id*. ¶ 35. Schlesinger, a resident of Brooklyn, New York, is the sole owner of Allstate. *Id*. ¶ 37. And Muller, a resident of Monsey, New York, is alleged to be an agent of the other named defendants. *Id*. ¶ 38; *see generally* Am. Compl.

Oriska's amended complaint accuses the individual defendants of orchestrating a scheme to divert insurance payments "expensed" by the Sentosa SNFs to a straw person named Allstate. Am. Compl. ¶¶ 2-3. According to plaintiff's complaint, these transactions pass audit with the New York State Department of Health ("DOH"), a regulatory entity responsible for oversight matters, because Allstate generates "bogus invoices" that match up with the expense payments. *Id*. ¶ 3.

In brief summary, the Sentosa SNFs report the premiums they are supposed to pay into certain trusts established under New York law to fund workers' compensation insurance

---

[5] Although the Court declines to regurgitate all, or even most, of the voluminous factual allegations set forth in Oriska's ninety-page operative pleading and forty-four page civil RICO statement, the various non-conclusory factual allegations in these documents will be accepted as true for purposes of evaluating the pending motions to dismiss. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 541 (W.D.N.Y. 2014) ("[A] RICO case statement should be read together with a complaint on a motion to dismiss.").

on behalf of their employees as expenses in cost reports submitted to the DOH. Am. Compl. ¶ 5. Although they are supposed to pay these premiums to Oriska, their commercial insurance carrier, they instead make some or all of these payments to straw persons who "convert[ ] [the funds] to unauthorized personal and illegal uses" that benefit the named defendants. *Id.*

In its amended complaint and Civil RICO Statement, Oriska repeatedly points out that it settled a string of state court lawsuits against these defendants (with the exception of Shorefront) on September 24, 2013. *See* Am. Compl. ¶¶ 102, 106, 109; Pl.'s Civil RICO Statement at pp. 9, 10, 12, 23, 26.[6]

Oriska alleges that this September 24, 2013 settlement agreement "reaffirmed the obligation of the Sentosa SNFs to reimburse benefits paid within a deductible and provide collateral to secure the collectability of reimbursement for benefits paid by Plaintiff to employees of the Sentosa SNFs." Am. Compl. ¶ 102. Indeed, plaintiff alleges that the parties "settled the case on September 24, 2013 by agreeing to pay funds into a 114 Trust to fund the self-insured workman's compensation program." *Id.* ¶ 105.

The Sentosa defendants have attached a copy of the September 24, 2013 settlement agreement to their motion to dismiss. Ex. B to Schlesinger Decl., Dkt. No. 74-3, pp. 134-158. As relevant here, that filing included a forum selection clause governing future disputes over the same subject matter:

> The jurisdiction of this Court shall continue beyond the execution and filing of this Stipulation and the discontinuance of these actions to the extent necessary to resolve and finally determine any disputes that arise under the terms of this stipulation.

---

[6] Pagination corresponds to CM/ECF.

Ex. B to Schlesinger Decl. ¶ 21.

## III. DISCUSSION

### A. Motions to Dismiss

The Sentosa defendants and Muller have both moved to dismiss the amended complaint in its entirety under Rule 12(b)(6). According to the Sentosa defendants, the forum clause in the September 24, 2013 settlement agreement necessitates dismissal of this action because this lawsuit is just an attempt to federalize a dispute over defendants' ongoing compliance with the terms of the agreement. Both defendants further argue that Oriska has failed to plead viable claims under RICO, the Lanham Act, or ERISA, and that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id.*

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.). In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

However, in some cases, "a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel*, 820 F.3d at 559. "Even where a document is considered 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted).

"This generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (citation and internal quotation marks omitted).

Finally, when fraud is alleged, Rule 9(b) requires the complaint "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b); *see also Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 442 (S.D.N.Y. 2014) ("All claims sounding in fraud—including those under RICO—must comply with Rule 9(b)'s heightened pleading standard." (citation omitted)).

"Under this standard, a complaint alleging fraud must typically '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 256 (S.D.N.Y. 2019) (quoting *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017)). "Allegations that are conclusory or unsupported by factual assertions are

insufficient." *Shetiwy*, 15 F. Supp. 3d at 442 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).

## 1. The Forum Clause

The Sentosa defendants contend that a clause in the September 24, 2013 settlement agreement (the "September 24 Agreement" or the "Stipulation") necessitates the dismissal of Oriska's complaint because it makes Supreme Court, Oneida County the exclusive forum for disputes arising out of the parties' contractual relationship. Sentosa Mem., Dkt. No. 74-1 at 9-10.

According to defendants, Oriska's claims arise out of the very same subject matter covered by the Stipulation; *i.e.*, whether the Sentosa SNFs made certain required expense payments into a trust for plaintiff's benefit. Sentosa Mem. at 10. Indeed, defendants point out that plaintiff's operative complaint specifically alleges the Stipulation is the *source* of these continuing payment obligations. *Id*. at 10-11; *see also* Am. Compl. ¶ 102 ("Settlement of the Oneida County lawsuits (the "9/24/13 Settlement") reaffirmed the obligation of the Sentosa SNFs to reimburse benefits paid . . . . ").

Oriska responds that "[t]his is simply not true." Pl.'s Opp'n, Dkt. No. 90-1, 6. According to plaintiff, two *earlier* administrative agreements executed by the parties in 2006 and 2007 actually govern the matters at issue here. *Id*. at 6-7. In plaintiff's view, the September 24, 2013 Agreement does not address these prior administrative agreements and therefore these prior agreements are "still in effect." *Id*. Even assuming otherwise, plaintiff maintains that its federal claims under RICO, the Lanham Act, and ERISA go beyond the terms of the Stipulation. *Id*.

The Sentosa defendants reply, in essence, that this is nonsensical.  Sentosa Reply,

Dkt. No. 97, 5.  In their view, Oriska has offered no support for the notion that those prior

administrative agreements—which pre-date the September 24, 2013 Agreement by over five

years—should still be in effect or should govern matters now.  *Id*. at 5-6.  According to

defendants, plaintiff's attempt to label its causes of action as arising under RICO, the

Lanham Act, or ERISA are improper and misleading:  this is a case about the "alleged

nonpayment of premiums for the insurance program governed by the Stipulation," precisely

the sort of dispute subject to the forum selection clause in the first place.  *Id*. at 6.

"A forum selection clause is presumptively enforceable where (1) it was 'reasonably

communicated to the party resisting enforcement,' (2) it is 'mandatory,' and (3) 'the claims

and parties involved in the suit are subject to the forum selection clause.'"  *Midamines SPRL

Ltd. v. KBC Bank NV*, 601 F. App'x 43, 45 (2d Cir. 2015) (summary order) (quoting *Phillips v.

Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007)).  "This presumption of enforceability

can only be rebutted by the fourth factor:  (4) a showing that enforcement would be

'unreasonable or unjust,' or that the clause was 'invalid for such reasons as fraud or

overreaching.'"  *Id*.

"Whether a forum selection clause is mandatory depends on its language, and

generally courts will not enforce a clause that specifies only jurisdiction in a designated court

without any language indicating that specific jurisdiction is exclusive."  *Salis v. Am. Exp.

Lines*, 331 F. App'x 811, 813 (2d Cir. 2009) (summary order).  However, "[i]f the forum

selection clause was communicated to the resisting party, is mandatory and applies to the

claims and parties involved, it is presumptively enforceable."  *Id*.

"A resisting party can rebut the presumption of enforceability by clearly showing 'that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Salis*, 331 F. App'x at 813 (quoting *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)).  For instance, forum selection clauses are unreasonable:

> (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

*Roby v. Corp. of Lloyd's*, 996 F.3d 1353, 1361 (2d Cir. 1993).

Upon review, the September 24, 2013 Agreement mandates dismissal of all of Oriska's various claims.  As an initial matter, plaintiff does not claim that it was unaware of the language in the Stipulation or that the clause is permissive rather than mandatory.  *See* Pl.'s Opp'n at 6-7.  Instead, plaintiff acknowledges being a party to the Stipulation, but makes two arguments against its application:  *first*, that a set of pre-existing administrative agreements govern this case; and *second*, that its claims fall outside the scope of the Stipulation.  *Id*.

Oriska's first argument is easily dispatched.  Among other things, ¶ 10 of the Stipulation explicitly states that it "resolves all disputes to date . . . and will further serve to regulate and govern . . . the relationship between the parties" going forward.  In other words, plaintiff cannot plausibly claim that those prior agreements still govern the parties' relationship.  This is especially so where, as here, plaintiff's own pleading explicitly references and relies on the terms and effect of the September 24, 2013 Agreement.

Oriska's second argument also falls short.  A careful review of plaintiff's operative complaint confirms that its various claims for relief are based on, *inter alia*, disputes over which entities are responsible for paying into the trust, how much money must be paid into and held in those trusts, and who owes fiduciary duties in connection with those payments and those funds; *i.e.*, these disputes arise out of the parties' ongoing business relationship, which can be traced back to the Stipulation.  *See, e.g.*, *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 433 (E.D.N.Y. 2014) (focusing on plaintiff's factual allegations rather than plaintiff's choice of labeling for its causes of action).

Courts have repeatedly rejected attempts by parties to plead their way around the enforcement of an otherwise applicable forum selection clause.  *See, e.g.*, *Roby*, 996 F.2d at 1360 ("We refuse to allow a party's solemn promise to be defeated by artful pleading.").  Oriska's decision to invoke RICO does nothing to change this result.  *Midamines SPRL Ltd.*, 601 F. App'x at 46 (affirming district court's dismissal of plaintiff's claims for, *inter alia*, racketeering and fraud because underlying factual allegations triggered forum selection clause); *see also Phillips*, 494 F.3d at 388 ("[I]t is inappropriate in the present context to depend solely on the legal labels used by plaintiff to decide if his case arises out of the contract.").

This conclusion also applies to Shorefront, an entity closely related to the other Sentosa SNFs though not a party to the Stipulation.  *See, e.g.*, *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) ("[A] non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory.").  Accordingly, plaintiff's suit is subject to dismissal on this basis alone.

### 2. Oriska's Federal Claims

Even on the merits, Oriska has failed to plead plausible federal claims under RICO, the Lanham Act, or ERISA. Plaintiff's first three causes of actions allege RICO violations based on the predicate acts of wire fraud, embezzlement, and money laundering. Am. Compl. ¶¶ 139-216.

In particular, Oriska's first RICO claim alleges a violation of 18 U.S.C. § 1962(c), which make it unlawful to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. Am. Compl. ¶¶ 139-202. Plaintiff's second RICO claim alleges a violation of § 1962(a), which makes it unlawful to use or invest income derived from racketeering activity into an enterprise. *Id*. ¶¶ 203-08. Plaintiff's third RICO claim alleges a violation of § 1962(d), which makes it unlawful to conspire to commit violations of the substantive components of the RICO statute. *Id*. ¶¶ 209-16.

Oriska's fourth cause of action alleges a violation of the Lanham Act based on defendants' alleged use of "false advertising" about "the legality of Defendant's operation of a health, disability and worker's compensation self-insurance program using Plaintiff's proprietary licenses and approvals." *Id*. ¶¶ 217-24. Plaintiff's fifth cause of action is an ERISA claim based on defendants' alleged diversion of money from the trusts in violation of their fiduciary duties. *Id*. ¶¶ 225-66.

All five claims are meritless and must be dismissed.

### a. RICO

"Congress enacted RICO in 1970 as part of the Organized Crime Control Act to seek the eradication of organized crime in the United States." *Am. Fed'n of State, Cty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d

338, 344 (S.D.N.Y. 2013) ("*Bristol-Myers Squibb Co.*") (citation and internal quotation marks omitted).

As relevant here, the civil component of the RICO statute provides a private right of action for treble damages, attorney's fees, and costs to any "person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *see also Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014) ("When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees.").

Notably, however, RICO is not limited to "mobsters and organized criminals." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985). Instead, the Supreme Court has repeatedly instructed the lower courts that RICO should be read broadly. *Boyle v. United States*, 556 U.S. 938, 944 (2009) (collecting cases). This makes "[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).

"Consequently, courts have an obligation to scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Bristol-Myers Squibb Co.*, 948 F. Supp. 2d at 345 (citation omitted); *see also Mackin*, 59 F. Supp. 3d at 541 ("Courts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." (citation omitted)).

To be sure, "[t]he true civil RICO plaintiff may well provide a laudatory societal service, supplementing the government's efforts 'to protect the general public and the common good

from felonious conduct.'" *Bristol-Myers Squibb Co.*, 948 F. Supp. 2d at 345 (quoting *Gross v. Waywell*, 628 F. Supp. 2d 475, 481 (S.D.N.Y. 2009)). However, "it is well known that the federal courts are flooded with cases molded to the RICO form, even though they are truly little more than garden variety claims for fraud." *Id.*; *see also Sky Med. Supply Inc.*, 17 F. Supp. 3d at 220 (noting that "plaintiffs wielding RICO almost always miss the mark").

Section 1962 sets forth four separate RICO offenses, with each subsection requiring certain elements. Generally speaking, however, a civil RICO plaintiff has two pleading burdens.[7] *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). First, the plaintiff must allege a violation of the substantive RICO statute by pleading "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting 18 U.S.C. § 1962(a)–(c)). Second, the plaintiff must allege that he was "injured in his business or property *by reason of* a violation of section 1962." *Id.* (emphasis in original) (quoting 18 U.S.C. § 1964(c)).

### i. Section 1962(c)

Defendants argue Oriska's § 1962(c) claim must fail because plaintiff has failed to adequately plead the existence of a distinct RICO enterprise. Sentosa Mem. at 11. According to defendants, plaintiff has not offered any "allegations regarding the enterprise's purported structure separate and apart from the purported racketeering activity." *Id.* at 13.

---

[7] Non-fraud elements of a RICO claim are subject to Rule 8(a) while predicate acts sounding in fraud or mistake are subject to the particularity requirement of Rule 9(b). *See, e.g.*, *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (summary order).

Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

"The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one." *D. Penguin Bros. v. City Nat'l Bank*, 2014 WL 982859, at *4 (S.D.N.Y. Mar. 11, 2014), *aff'd*, 587 F. App'x 663 (2d Cir. 2014) (summary order). "An enterprise 'is an entity separate and apart from the pattern of activity in which it engages' and must be proven separately." *Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 443 (S.D.N.Y. 2014) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

"RICO requirements are most easily satisfied when the enterprise is a formal legal entity." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (Miner, J.). "But legitimacy is by no means a prerequisite to a RICO enterprise." *Id*. The definition of a RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

"The RICO statute 'describes two categories of associations that come within the purview of the 'enterprise' definition. The first encompasses organizations such as corporations and partnerships, and other 'legal entities.' The second covers 'any union or group of individuals associated in fact although not a legal entity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 364 (3d Cir. 2010) (quoting *United States v. Turkette*, 452 U.S. 576, 581-82 (1981)).

Where, as here, the RICO plaintiff alleges that an "association in fact" existed amongst the various named defendants, the enterprise "must have at least three structural features:  (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose."  *D. Penguin Bros.*, 587 F. App'x at 667 (quoting *Boyle*, 556 U.S. at 946).

Of course, "[a] RICO enterprise is not required to have business-like characteristics such as 'a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.'"  *Mackin*, 59 F. Supp. 3d at 542 (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009)).

However, "[f]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes."  *First Capital Asset Mgmt., Inc.*, 385 F.3d at 174 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993)).

Oriska's allegations fail to satisfy this threshold requirement.  *See* Am. Compl. ¶ 142. According to plaintiff's Civil RICO Statement, all of the defendants "were part of the enterprise by reason of the fact that they committed and conspired to commit racketeering acts."  Pl.'s Civil RICO Statement at 34.  In terms of the structure of this alleged enterprise, plaintiff asserts that it "involves the operation" of the Sentosa SNFs, and consists of Schlesinger "working with" these entities as the "straw person" who received stolen funds. *Id*. at 35.  In terms of its purpose, plaintiff alleges that it "is to steal workers' compensation insurance premiums and trust fund assets from the Plaintiff for many years."  *Id*. at 36.

As the Sentosa defendants point out, Oriska has not offered any plausible, non-conclusory allegations about the overarching structure or unified function or purpose of

the enterprise. Rather, plaintiff's explanation about "the structure, purpose, function and course of conduct of the enterprise" involves only the alleged racketeering activity. Plaintiff responds by claiming that "[t]here is no requirement that an enterprise have an ascertainable structure distinct from the pattern of racketeering activity." Pl.'s Opp'n at 12.

Oriska's response is based on the Supreme Court's decision in *Boyle v. United States*, 556 U.S. 938 (2009), a challenge to jury instructions in a criminal case. There, the Court emphasized that the alleged RICO enterprise did not need to have a formal structure, hierarchical chain of command, or any of the traditional features that define an organized, distinct entity. *Id*. at 947 (recognizing "that the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce'").

However, "an enterprise is defined by what it is, not what it does." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). Even after *Boyle*, courts still require *some* indication that a RICO enterprise exists separate and apart from the bare pattern of activity in which it engages. *Shetiwy*, 15 F. Supp. 3d at 443; *see also Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 388 (7th Cir. 2010) (Posner, J.) (discussing *Boyle*'s apparent relaxation of the enterprise requirement).

Indeed, the Second Circuit has continued to emphasize that "the plain language and purpose of the statute contemplate that a *person* violates the statute by conducting an *enterprise* through a pattern of criminality." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (emphases in original). And as Judge Posner has explained, "[t]he only important thing is that [the RICO enterprise] be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in

the organization) separable from the individual." *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985).

The three structural features identified by the Supreme Court in *Boyle*—purpose, relationships, and longevity—are intended to help courts draw the sometimes fine line between disparate criminal conduct and an ongoing, purposeful RICO enterprise. *D. Penguin Bros.*, 587 F. App'x at 667; *see also First Capital Asset Mgmt., Inc.*, 385 F.3d at 174 (requiring at least some indication that the various members of the alleged enterprise "functioned as a unit").

At its core, Oriska's pleading essentially describes a breach of the terms of the parties' agreement, and *possibly* some tortious misconduct: one or more individuals allegedly used their authority to redirect funds somewhere not provided for in the parties' agreement; the diversion came from the legitimate business operations of the Sentosa SNFs; and there was some alteration of business records that made it more difficult for plaintiff to discover that the money was not where it was supposed to be.

By all appearances, then, "[t]his is a breach of contract action that Plaintiff is attempting to transform into a federal RICO case." *Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.*, 280 F. Supp. 3d 349, 356 (E.D.N.Y. 2017); *see also* Faryniarz v. Ramirez, 62 F. Supp. 3d 240, 254 (D. Conn. 2014) ("Though styled as violations of federal law, Plaintiff's proposed civil RICO claims suggests in substance claims for breach of contract and common business tort.").

Even assuming otherwise, Oriska has failed to plead how the alleged acts furthered the affairs of the enterprise rather than the affairs of the individuals. *See, e.g., Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("[L]iability depends on showing that the

defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.").

The distinction matters, because "RICO is not violated every time two or more individuals commit one of the predicate crimes listed in the statute." *United Food & Comm. Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 851 (7th Cir. 2013); *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010) (finding enterprise element insufficiently pleaded where "[p]laintiff allege[d] that Newsday, its employees, and various independent contractors engaged in a series of independent frauds that somehow benefitted Newsday").

Thus, even assuming the individuals named as defendants in Oriska's complaint "worked together in some respects to steal plaintiff['s] funds," the pleading still fails to create a "plausible inference that they did so to advance the [ ] agenda of their purported 'enterprise' or for any shared purpose." *D. Penguin Bros.*, 587 F. App'x at 668; *see also Walgreen Co.*, 719 F.3d at 854 ("[N]othing in the complaint reveals how one might infer that these communications or actions were undertaken on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests." (emphasis in original)). Accordingly, plaintiff has failed to sufficiently plead a claim for relief under § 1962(c).

### ii. Section 1962(a)

Defendants argue Oriska's § 1962(a) claim also fails because plaintiff "does not allege that racketeering income was used or invested in the enterprise, or that [plaintiff] was injured as a result of the investment." Sentosa Mem. at 15. According to defendants, plaintiff

alleges in wholly conclusory terms that the missing money was diverted to personal or other business uses. *Id*.

Under § 1962(a), it is "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

"[T]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income." *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 446 (E.D.N.Y. 2007) (quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990)). "Accordingly, to state a claim under 1962(a), a plaintiff must allege an injury resulting from the defendant's investment of racketeering income in an enterprise (i.e., an 'investment injury'), separate and apart from any injury caused by the predicate acts themselves." *Id*. (quoting *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F. Supp. 2d 357, 371 (S.D.N.Y. 2005)).

Oriska has not alleged a distinct injury arising from the investment of any racketeering income. Instead, plaintiff has more generally alleged the diversion of money to "personal and business expenses of the defendants." Am. Compl. ¶ 205. But even assuming plaintiff is referring to the "business expenses" of a shared enterprise, "allegations that a RICO enterprise simply reinvested racketeering proceeds back into its own activities, on their own, are insufficient to maintain a claim under § 1962(a)." *Gristede's Foods, Inc.*, 532 F. Supp. 2d at 446-47.

Elsewhere, Oriska confirms this by alleging it was injured by defendants' failure to properly fund the trusts.  Am. Compl. ¶ 207.  In other words, plaintiff's injury arises from the alleged predicate acts of racketeering, not the investment of any racketeering income.  *See, e.g.*, *Ouaknine*, 897 F.2d at 83 ("Because the conduct constituting a violation of § 1962(a) is investment of racketeering income, a plaintiff must allege injury from defendant's investment of the racketeering income to recover under § 1962(a).").  Accordingly, plaintiff has failed to sufficiently plead a claim under § 1962(a).

### iii.  <u>Section 1962(d)</u>

These conclusions are fatal to Oriska's claim under § 1962(d), which "makes it unlawful to conspire to violate any of the other three prohibitions."  *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2097 (2016); *see also D. Penguin Bros.*, 587 F. App'x at 669 ("The failure to state a claim for a substantive RICO violation, moreover, is fatal to plaintiffs' RICO conspiracy claim under § 1962(d).").

In sum, the Court concludes that this is one of those cases "molded to the RICO form" that in reality involves "garden variety claims for fraud" or possibly claims for breach of contract.  *Bristol-Myers Squibb Co.*, 948 F. Supp. 2d at 345; *see also Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000) (McMahon, J.) (surmising "that every member of the federal bench has before him or her at least one—and possibly more—garden variety fraud or breach of contract cases that some Plaintiff has attempted to transform into a vehicle for treble damages").  Accordingly, plaintiff's first three causes of action under RICO will be dismissed for failure to state a plausible claim for relief.

**b. Lanham Act**

Oriska's fourth cause of action arises under the Lanham Act, the federal statute that governs trademarks and claims for unfair competition. According to plaintiff, "[it] was part of the scheme to defraud to constitute false designation of origin, false descriptions and representations, and false advertising in commerce by Defendants' activities." Am. Compl. ¶ 22. Plaintiff alleges defendants "have made, and continue to make untrue, false, deceptive or misleading misrepresentations, misstatements and material omissions regarding the legality of Defendant's operation of a health, disability and worker's compensation self-insurance program using Plaintiff's proprietary licenses and approvals." *Id.* ¶ 223.

Defendants argue this claim must be dismissed because "Oriska has failed to even plead the elements of such a claim." Sentosa Mem. at 22. According to defendants, plaintiff's pleadings "is so vague that it fails to even identify what type of Lanham Act violation it alleges." *Id.* Plaintiff responds that defendants "misappropriated Plaintiff's credentials, authority, licensing and property to deceive government authorities, consumers and the public." Pl.'s Opp'n at 21. Defendants reply that plaintiff has failed to even allege "that the Defendants misrepresented goods or services created directly by Oriska as their own." Sentosa Reply at 13.

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition." *Thousand Island Park Corp. v. Welser*, 314 F. Supp. 3d 391, 396 (N.D.N.Y. 2018) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003)). As relevant here, the Lanham Act provides for civil liability against:

(1)      Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

      (A)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

      (B)     in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(A)-(B); *see also* Am. Compl. ¶ 221 (flagging these provisions as relevant).

A plaintiff alleging a violation of § 1125(a)(1)(A) based on false association must establish that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods and services,' . . . (5) without the plaintiff's consent." *Thousand Island Park Corp.*, 314 F. Supp. 3d at 397 (quoting *1–800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005)).

"In addition, a Lanham Act plaintiff must also show that the defendant's use of the mark is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." *Thousand Island Park Corp.*, 314 F. Supp. 3d at 397 (citation and internal quotation marks omitted).

"Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 383 (2d Cir. 2005) (citation omitted). "Importantly, though, this confusion requirement demands a showing of a 'probability of confusion, not a mere possibility,' and it must be of a kind likely to affect 'numerous ordinary prudent purchasers.'" *Thousand Island Park Corp.*, 314 F. Supp. 3d at 397 (quoting *Star Indus. Inc.*, 412 F.3d at 383).

Defendants argue that Oriska has not satisfied any of these elements: "[i]t has not identified a valid mark entitled to protection under the Lanham Act; it has not pleaded that defendants used that mark in commerce in connection with the sale or advertising of goods or services, without Oriska's consent; and it has not pleaded that Defendants' use of that mark is likely to cause confusion." Sentosa Mem. at 23. Plaintiff responds by stating in the most conclusory of terms that defendants' scheme misused plaintiff's "credentials, authority, licensing and property" to deceive authorities and the public. Pl.'s Opp'n at 22.

Upon review, this claim will be dismissed for failure to state a plausible claim for relief. *Iqbal*, 556 U.S. at 679 ("[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its experience and common sense.").

A common sense reading of Oriska's operative complaint and its opposition memorandum makes plain that plaintiff is attempting to "misuse the Lanham Act by making a federal case out of an otherwise garden-variety contract dispute." *Thousand Island Park Corp.*, 314 F. Supp. 3d at 398. Plaintiff has not offered anything approaching the kind of

specific details required to make this a plausible claim.  Accordingly, this claim will be dismissed.

Oriska's alleged § 1125(a)(1)(B) claim must also be dismissed.  Under this "false advertising" provision, a party must ultimately show:  "(1) a false or misleading statement; (2) in connection with commercial advertising or promotion that (3) was material, (4) was made in interstate commerce, and (5) damaged or will likely damage the plaintiff."  *Chobani LLC v. Dannon Co., Inc.*, 157 F. Supp. 3d 190, 200 (N.D.N.Y. 2016) (quoting *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 242 (S.D.N.Y. 2013)).  Again, though, plaintiff has not identified any particular advertisement alleged to be false, literally or impliedly or otherwise.  *Id*. at 199-200.  Accordingly, plaintiff's Lanham Act claim will be dismissed.

### c. **ERISA**

Oriska's fifth cause of action is based on defendants' alleged diversion of money from the trusts in violation of their fiduciary duties under ERISA.  Am. Compl. ¶¶ 225-66 (citing 28 U.S.C. § 1132).

Defendants argue that Oriska cannot pursue this claim because workers' compensation insurance is specifically exempted from ERISA's definition of a benefits "plan."  Sentosa Mem. at 24 (citing 29 U.S.C. § 1003(b)(3)).  Plaintiff responds that the benefits plan operated by defendants "co-mingled contributions for the payment of health, disability and workers' compensation benefits."  Pl.'s Opp'n at 18.  Plaintiff further argues that defendants are liable as fiduciaries under an "unwritten plan" or, in the alternative, that plaintiff can sue as a subrogee of the plan's beneficiaries.  *Id*. at 9.

Upon review, this claim will be dismissed.  First, 29 U.S.C. § 1003(b)(3) specifically exempts from ERISA's coverage a "plan" that is "maintained solely for the purpose of

complying with applicable work[ers'] compensation laws."  As defendants point out, plaintiff's allegation that § 1003(b)(3)'s exemption is inapplicable in this particular case is phrased in totally conclusory language.  *See* Am. Compl. ¶ 235 ("[T]he Sentosa Plan of the Sentosa SNFs is not exempt from ERISA as it was not maintained solely for the purpose of complying with applicable workman's compensation laws.").

Even assuming Oriska is correct about the alleged co-mingling of "plan" assets, Oriska would still be unable to assert a plausible federal claim under ERISA in its individual capacity.  "Courts have consistently read § 1132(a)(3) as strictly limiting 'the universe of plaintiffs who may bring certain civil actions.'"  *Connecticut v. Physicians Health Servs. Of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002) ("*Physicians Health*") (quoting *Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000)).

Under § 1132(a)(3), a "participant, beneficiary, or fiduciary" may sue to recover benefits due, enforce rights, or clarify rights to future benefits.  The Supreme Court has described this as a "catchall" remedial section for equitable relief.  *See Coan v. Kaufman*, 457 F.3d 250, 262 (2d Cir. 2006) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)).  However, "[a]bsent a valid assignment of a claim, at least, non-enumerated parties lack statutory standing to bring suit under § 1132(a)(3) even if they have a direct stake in the outcome of the litigation."  *Physicians Health*, 287 F.3d at 121.

In sum, Oriska has not plausibly alleged an entitlement to bring a claim under ERISA for the reasons set forth in defendants' memoranda.  Accordingly, plaintiff's ERISA claim will be dismissed.

**B. Other Matters**

**1. State Law Claims**

Because Oriska's five federal claims will be dismissed and the parties are non-diverse, the Court declines to exercise supplemental jurisdiction over plaintiff's various state law claims. *See* 28 U.S.C. § 1967(c)(3). In so doing, the Court notes that plaintiff has repeatedly represented to the Court that Rashbi Management and US Management have only been named as defendants "solely for [their] interest in the disposition of funds that are the subject of this action." *See, e.g.*, Dkt. No. 121-1. Accordingly, plaintiff's operative complaint is construed as raising only state law claims against these two defendants (if any at all).

**2. Preliminary Injunction**

Oriska's pending motion for a preliminary injunction will be denied as moot in light of the conclusions set forth above. *See, e.g.*, *New Hope Family Servs., Inc. v. Poole*, 387 F. Supp. 3d 194, 216 (N.D.N.Y. 2019) (D'Agostino, J.) (granting defendant's Rule 12(b)(6) motion to dismiss plaintiff's complaint and denying as moot plaintiff's motion for preliminary injunctive relief); *Crandall v. N.Y. State Dep't of Motor Vehicles*, 2011 WL 2295742, at *3 (N.D.N.Y. June 8, 2011) (Sharpe, J.) (same).

**3. Magistrate Judge Appeal**

Oriska has also appealed from Judge Peebles's November 21, 2018 Decision and Order.

Where, as here, a party challenges a magistrate judge's decision on a non-dispositive matter, it may only be modified or set aside if it is "clearly erroneous" or "contrary to law." 28

U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). "A finding is clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 685 (N.D.N.Y. 2015) (Suddaby, J.) (citations and internal quotation marks omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.*

Upon review, Oriska's motion will be denied. Judge Peebles's Order is well-reasoned, adequately supported by the facts, and correctly applies the governing law.

## 4. Supplemental Jurisdiction

Oriska, citing 28 U.S.C. § 1367, has also moved this Court to exercise "supplemental jurisdiction" over a pending state court action.

"The power reserved to the states, under the Constitution (Amendment 10), to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution (article 3)." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). In other words, "a suit commenced in state court must remain there until cause is shown for its transfer under some act of Congress." *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 280 (1918).

"In 1990, Congress consolidated and codified the common law doctrines of ancillary and pendent jurisdiction under the title 'Supplemental jurisdiction,'" *Motion Control Corp. v. SICK, Inc.*, 354 F.3d 702, 705 (8th Cir. 2003), "a generic term encompassing what courts historically called 'pendent' and 'ancillary' jurisdiction." 13D FED. PRAC. & PROC. JURIS. § 3567. However, § 1367 does not provide a federal court with the authority to pluck a pending action out of a state forum. *Cf. id*. Indeed, § 1367 "does not mention removal at all." *Motion Control Corp.*, 354 F.3d at 705. Accordingly, "that statute cannot form the basis

for removal." *Sovereign Bank, N.A. v. Lee*, 968 F. Supp. 2d 515, 518 (E.D.N.Y. 2013). In sum, this motion is meritless and will be denied.

### 5. Sanctions

Finally, the Sentosa defendants have moved under Rule 11 seeking sanctions against Oriska and its counsel for including "patently false" factual allegations in its operative pleading. Sentosa Mem., Dkt. No. 105-3, 3. In defendants' view, the parties' September 24, 2013 settlement agreement resolved "most, if not all, of the issues raised in this litigation." *Id*. at 6. And since Attorney Kernan participated in that settlement, he "clearly knew the correct facts" when drafting the Amended Complaint. *Id*. Defendants further argue they put Attorney McCormack, who signed plaintiff's Civil RICO Statement, on notice of the factual misstatements. *Id*.

Oriska responds that the Sentosa defendants' motion is just "a bullying tactic intended to intimidate Plaintiff into withdrawing a legitimate claim and to delay the litigation process." Pl.'s Opp'n, Dkt. No. 110, 5-6. In plaintiff's view, sanctions should be awarded against *defendants* for this "inappropriate and baseless motion." *Id*. at 6.

Attorney McCormack has filed his own response. Dkt. No. 112. In that filing, he claims that his conduct has been objectively reasonable: he performed a diligent investigation of the applicable facts and law, and the positions he took on Oriska's behalf were "reasonable under the circumstances." *Id*. In Attorney McCormack's telling, defendants "have lost their perspective and restraint" after "years of acrimonious litigation with Oriska." *Id*.

The applicable Rule provides that:

> (b) By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id*. at 11(c)(4).

Importantly, though, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003). In fact, Rule 11 "is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986 (citation and internal quotation marks omitted). Finally, "even where a court determines that Rule

11(b) has been violated, the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion." *Lorber v. Winston*, 993 F. Supp. 2d 250, 253 (E.D.N.Y. 2014).

Upon review of the parties' submissions, this motion will be denied without prejudice. *See, e.g.*, *Burke v. Quick Lift, Inc.*, 464 F. Supp. 2d 150, 163 (E.D.N.Y. 2006) ("[W]hen divining the point at which an argument turns from merely losing to losing and sanctionable, courts must resolve all doubts in favor of the signer of the pleading."). However, both parties are warned that a different conclusion may well be warranted on this issue in the event that further proceedings take place in this forum.

## IV. CONCLUSION

Oriska's federal claims will be dismissed with prejudice. Supplemental jurisdiction will be declined over plaintiff's state law claims. The other pending motions will be denied.

Therefore, it is

ORDERED that

1. The Sentosa defendants' motion to dismiss is GRANTED in part and DENIED in part;

2. Muller's motion to dismiss is GRANTED in part and DENIED in part;

3. Oriska's federal claims are DISMISSED with prejudice;

4. Oriska's state law claims are DISMISSED without prejudice;

5. Oriska's motion for a preliminary injunction is DENIED;

6. Oriska's appeal from Judge Peebles's November 21 Order is DENIED;

7. Oriska's motion for "supplemental jurisdiction" is DENIED;

8. The Sentosa defendants' motion for sanctions is DENIED without prejudice; and

9. Oriska's amended complaint is DISMISSED.

The Clerk of the Court is directed to terminate all of the pending motions and close the

file.

IT IS SO ORDERED.


Dated:  September 4, 2019
        Utica, New York.

_____
United States District Judge